**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **SPIRIT MONKEY, LLC,** | § | |
| **Plaintiff,** | § | **Case. No. 5:20-CV-00342** |
| **v.** | § | |
| | § | |
| **IMAGESTUFF.COM, INC.,** | § | |
| **d/b/a SCHOOL LIFE,** | § | **DEMAND FOR JURY TRIAL** |
| **Defendant.** | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

Plaintiff, Spirit Monkey, LLC, by and through its undersigned counsel, hereby sues Defendant, ImageStuff.com, Inc. d/b/a School Life, and in support, alleges and avers the following.

<u>**NATURE OF THE LAWSUIT**</u>

1.      This is a civil action to (i) temporarily and permanently enjoin acts of the following: trademark infringement and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); unfair competition; trademark infringement; palming off; and dilution under the law of the State of Texas, section 16.103 of the Texas Business & Commerce Code; cancellation of Defendant's trademark registration; and (ii) recover damages, lost profits, attorneys' fees, and costs.

2.      Defendant has infringed, misappropriated, and diluted Plaintiff's trademark rights developed and used by Plaintiff. Defendant has also unfairly competed by the dilution intentional and unauthorized use of Plaintiff's trademarks and common law trademark rights.

<u>**PARTIES**</u>

3.      Plaintiff, Spirit Monkey, LLC (hereafter referred to as "Plaintiff" or "Spirit Monkey") is a limited liability company organized under the laws of the State of Texas.

4.      Spirit Monkey's principal place of business is at 20702 Stone Oak Parkway, Suite 100, San Antonio, Texas 78258.

5.      Defendant, ImageStuff.com, Inc., d/b/a School Life (hereafter referred to as "Defendant" or "ImageStuff") is a corporation organized and existing under the laws of California, with places of business at 4045 Via Pescador, Unit A, Camarillo, CA 93012 and 17021 Seven Pines Dr, Spring, TX 77379.

6.      Defendant has a Certificate of Authority with the Office of the Secretary of State of Texas to do business in Texas and is doing business in Texas.

7.      Defendant has an office and manufacturing facility at 17021 Seven Pines Dr, Spring, TX 77379 for its business and President.

8.      Defendant's President and Director is James C. Stapleton and is listed with the Office of the Secretary of State of Texas as Defendant's registered agent for service of process at 17218 Cedar Placid Lane, Houston, TX 77068.

9.      Defendant can be served through its registered agent, James C. Stapleton, at 17218 Cedar Placid Lane, Houston, TX 77068.

### JURISDICTION AND VENUE

10.     This matter raises federal question arising out of and under the Lanham Act, 15 U.S.C. § 1125.

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), 15 U.S.C. § 1121, Chapter 85 of the Judiciary and Judicial Procedure Code, and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) for any other state-law claim asserted herein arising from the same transactions or occurrences and implicating the same questions of fact and related questions of law.

12.     The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs and is between citizens of different states.  Accordingly, this Court has jurisdiction pursuant also to 28 U.S.C. § 1332.

13.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b).

14.     Mr. James Clay Stapleton is the Chief Executive Officer of Defendant.

15.     Mr. James Clay Stapleton resides at 17218 Cedar Placid Lane, Houston, TX 77068.

16.     Defendant has a regular and established place of business at 17021 Seven Pines Dr, Spring, TX 77379.

17.     Defendant is subject to this Court's general and specific personal jurisdiction.

18.      Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in this District, thereby creating sufficient minimum contacts within the State of Texas and this District.

19.     Defendant conducts business in this District, the claims alleged in this Complaint arise in this District, and the acts of infringement, dilution, and unfair competition have taken place and are continuing to take place in this District.

20.     Defendant also conducts business through its website, which is interactive and has an online store listing over 72 infringing items at its web site located at https://www.schoollife.com/catalogsearch/result/?q=Brag+sticks. *See* Exhibit B.

21.     ImageStuff actively and regularly conducts business in the State of Texas and the Western District of Texas through its business division called School Life and two interactive online stores.

22.     Defendant has a regular and established place of business and manufacturing facility at 17021 Seven Pines Drive, Spring, Texas 77379.

23.     Defendant regularly markets and sells infringing products in the state of Texas and in this District.

24.     Defendant regularly exhibits, markets, and sells infringing products at trade shows in Texas, including at the TEPSA, Texas Elementary Principals and Supervisors Association, trade show held in Austin, Texas.

25.     Defendant markets and sells BRAG STICKS tags in San Antonio, Texas; Austin, Texas; Dallas, Texas; Houston, Texas; and many other cities and counties in Texas.

26.     Defendant actively markets, sells and offers to sell products and services throughout the United States, including the Western District of Texas.

27.     Defendant introduces products and services into the stream of commerce that incorporate infringing trademarks knowing that they would be sold in this judicial district and elsewhere in the United States.

28.     Defendant states on its website http://www.imagestuff.com/about-imagestuff/ that it has locations in "Camarillo, California" and "Houston, Texas."

29.     Defendant regularly and actively conducts business in the state of Texas and qualified with the Texas Secretary of State to do business in Texas.

30.     Defendant actively and regularly solicits and conducts business and has sold substantial infringing products in the state of Texas and the Western District of Texas and has designated or maintained a Texas resident agent for service of process.

31.     Therefore, Defendant may be served with process by delivering a copy of the complaint to the Defendant's registered agent for service of process, Mr. James Clay Stapleton at 17218 Cedar Placid Lane, Houston, TX 77068.

## FACTUAL ALLEGATIONS

### A.     SPIRIT MONKEY AND ITS INTELLECTUAL PROPERTY

32.     Spirit Monkey was founded in 2011 by Lisa deBonoPaula, a mother of two daughters and two sons.

33.     Spirit Monkey conducts its business in accordance with Christian values and strive to maintain a friendly, fair, and creative work environment that encourages ingenuity, diligence, dignity, and respect of everyone.

34.     Spirit Monkey designs, creates, and sells several products that fulfill its mission.

35.     Mrs. deBonoPaula created Spirit Monkey and its products to provide improved ways to enrich the educational experience for young people by recognizing and rewarding student participation, good behavior, personal and academic achievements, volunteer efforts, and other commendable growth the teachers and/or administrators may wish to incentivize in the student body or organization.

36.     Spirit Monkey is dedicated to enriching the academic experience of school children by providing high-quality products that reward their achievements and promote participation in the learning environment.

37.     One such product is SPIRIT STICKS® patches or tags, which are small, generally rectangular patches or tags that students can earn, collect, and display on a Spirit Ring™, lanyard, or key ring.

38.     SPIRIT STICKS® tags patches or tags promote school spirit and encourage both extrinsic and intrinsic motivation for students to perform at their best by providing meaningful rewards that have lasting value throughout and beyond the school year.

39.     In the years since their creation, SPIRIT STICKS® patches or tags have received enormous praise from students, parents, teachers, school administrators throughout Texas, and have enjoyed significant commercial success in Texas and other states.

40.     SPIRIT STICKS® patches or tags have achieved a huge financial success in Texas, and other states, which is attributable to their unique patented design, structure, and features.

41.     SPIRIT STICKS® patches or tags have become famous throughout the state of Texas or at least throughout the San Antonio, Houston, Dallas, and Austin metropolitan areas.

42.     Spirit Monkey has protected its business by federally registering its trademarks.

43.     Spirit Monkey has registered the mark SPIRIT STICKS® on the Principal Register of the United States Patent and Trademark Office, registration No. 4,326,600, registered April 30, 2013.  *See* Exhibit A.

44.     This registration is valid and subsisting and incontestable.

45.     Spirit Monkey owns the federally registered trademark SPIRIT STICKS®.

46.     A true and correct copy of the federal trademark registration for SPIRIT STICKS® is annexed hereto as Exhibit A.

47.     The distinctive elements of Spirit Monkey's SPIRIT STICKS® marks were copied by Defendant, so that one could substitute Defendant's product for Spirit Monkey's product without the recipient knowing they had been palmed off and they had been deceived.

**B.     DEFENDANT'S INFRINGING AND ILLEGAL ACTIONS**

48.     ImageStuff incorporated in California on February 20, 2004.

49.     The Chief Executive Officer of Defendant is James C. Stapleton, 17218 Cedar Placid Lane, Houston, TX 77068.

50.     Defendant applied for and received a currently valid Certificate of Authority from the Secretary of State of Texas to transact business in Texas.

51.     Defendant's registered agent for service of process is James C. Stapleton, 17218 Cedar Placid Lane, Houston, TX 77068.

52.     Defendant has a regular and established place of business at 17021 Seven Pines Dr, Spring, TX 77379.

53.     Defendant offers patches or tags directly competitive with, Spirit Monkey's SPIRIT STICKS® patches or tags.

54.     Defendants claim to have been in business for over 20 years with locations in Camarillo, California; Portland, Oregon; and Houston, Texas.

55.     Defendant makes and sells a knock-off patches or tags sold under the name BRAG STICKS (herein referred to as "patch or tag" products or goods).

56.     Defendant's patches or tags are offered for sale on the following websites: https://www.schoollife.com/school-products/brag-sticks.html                        and https://www.imagestuff.com/custom-spirit-brag-sticks-school.html.

57.     A true and correct copy of screenshots of https://www.schoollife.com/school-products/brag-sticks.html and https://www.imagestuff.com/custom-spirit-brag-sticks-school.html are annexed hereto as Exhibits B and C, respectively.

58.     In 2017, Plaintiff filed suit against Defendant for selling duplicates of Plaintiff's SPIRIT STICKS® patches or tags, trade dress and trademark infringement.

59.     The suit resulted in a final judgment, a true and correct copy of which is annexed hereto as Exhibit D.

60.     The final judgment provided that Defendant could no longer sell its patches or tags that infringed Plaintiff's United States Patent No. 9,196,174 and United States trademark registration No. 4,326,600 for SPIRIT STICKS® and the trade dress of Plaintiff's SPIRIT STICKS® patches or tags.

61.     Plaintiff's original SPIRIT STICKS® patches or tags were high quality patches or tags.

62.     In 2019, Defendant came out with another product to directly compete with Plaintiff's SPIRIT STICKS® patches or tags.

63.     Defendant named its new product BRAG STICKS because of its similarity to Plaintiff's SPIRIT STICKS® mark.

64.     Defendant's new BRAG STICKS product is a competitive substitute for Plaintiff's patches or tags, except they are manufactured from much less expensive molded rubber.

65.     Defendant's new rubber patches were allegedly first marketed July 1, 2019 under the name BRAG STICKS.

66.     Defendant's use of BRAG STICKS on its patches is a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered SPIRIT STICKS® mark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

67.     Defendant did not offer its patch or tag product for sale until long after Spirit Monkey's SPIRIT STICKS® became a commercial success.

68.     Several of Defendant's patches or tags are competitive with Spirit Monkey's successful SPIRIT STICKS® patches or tags.

69.     A side-by-side comparison illustrates the copying by Defendant's BRAG STICKS patches or tags from Spirit Monkey's SPIRIT STICKS® patches or tags:

SPIRIT MONKEY ORIGINAL ARTWORK

SCHOOL LIFE BRAG STICKS



Created March 2015





Created May 2017





Created June 2017





Created June 2018





Created May 2015





Created May 2015





Created September 2017





Created February 2019





Created February 2018





Created April 2018





70.     Although Defendant substantially copied Spirit Monkey's SPIRIT STICKS®, no trade name or trademark of Defendant's is affixed to the patches or tags when it is given to the recipient or end user.

71.     The lack of a trade name or trademark of Defendant affixed to the patches or tags when it is given to the recipient or end user causes confusion and association with Plaintiff.

72.     By leaving off any identification this enabled the substitution of Defendant's products for Spirit Monkey's SPIRIT STICKS® patches or tags without the end user knowing about the passing off and substitution.

73.     Defendant adopted BRAG STICKS with the intent to create consumer confusion between its products and Spirit Monkey's SPIRIT STICKS® patches or tags.

74.     On March 8, 2018, the United States District Court for the Western District of Texas entered into a STIPILATION AND ORDER between Plaintiff and Defendant. Exhibit D.

75.     The Order stated:

10. Trademark Registration No. 4, 326,600 for SPIRIT STICKS is valid. School Life shall not use the "Spirit Stick" mark on or in connection with the advertisement and sale of its PatchTag products. To the extent any such reference may exist, School Life shall remove such reference to the "Spirit Stick" mark from its website and sales materials.

11. Defendant shall notify any customer or purchaser requesting or ordering "Spirit Sticks" products that it does not sell "Spirit Sticks" products

76.     At the time of the ORDER, Defendant had changed its trademark to "BRAG TAGS."

77.     When the first suit was filed against Defendant in 2017, it was calling its products PatchTags and Patch Tags and PATCHTAGS$^{TM}$ and BragTags.

78.     Defendant was also using Spirit Sticks on its websites in connection with is Patch Tags products.

79.     After the ORDER was entered on March 8, 2018, Defendant had to discontinue using SPIRIT STICKS®.

80.     In June 2019, Defendant introduced a new product to compete directly with SPIRIT STICKS®.

81.     Defendant's new product was similar to SPIRIT STICKS® but was made of three-dimensional molded rubber.

82.     If Defendant had chosen a new and unique trademark for Defendant's new product, it would have taken time and effort to market the new product.

83.     Defendant marketed its new product under the name BRAG STICKS in June 2019.

84.     Defendant obtained U.S. trademark registration No. 5,940,164 on December 17, 2019 for BRAG STICKS for ornamental novelty badges for use as scholastic awards and incentives and for celebrating birthdays and for promoting holidays and scholastic events.

85.     Defendant's alleged date of first use of BRAG STICKS is July 1, 2019.

86.     Plaintiff is the owner of the trademark SPIRIT STICKS for patches or tags.

87.     Plaintiff's date of first use of SPIRIT STICKS® is July 17, 2011.

88.     Defendant had actual knowledge of Plaintiff's prior adoption and use of SPIRIT STICKS® before Defendant adopted and used BRAG STICKS.

89.     Defendant's use of BRAG STICKS constitutes dilution of Plaintiff's SPIRIT STICKS® mark.

90.     Defendant's use of BRAG STICKS will cause a likelihood of confusion with Plaintiff's SPIRIT STICKS® mark.

91.     Plaintiff is the prior user of its SPIRIT STICKS® mark.

92.     Defendant does not own or has not acquired any lawful rights in BRAG STICKS.

93.     Defendant is not a prior good faith user of BRAG STICKS.

94.     Defendant is not a lawful user of BRAG STICKS.

95.     BRAG STICKS is a colorable imitation of SPIRIT STICKS®.

96.     Defendant's use in commerce of BRAG STICKS is likely to cause confusion, or to cause mistake, or to deceive.

97.     Defendant's use in commerce of BRAG STICKS is a false designation of origin that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff.

98.     Defendant's use in commerce of BRAG STICKS is an infringement of SPIRIT STICKS®.

99.     The common descriptive name of Plaintiff's and Defendant's directly competing products is patches or tags.

100.     SPIRIT STICKS® and STICKS is not the common descriptive name of Plaintiff's and Defendant's directly competing patches or tags.

101.     Defendant's current web sites include coding and a database whereby anyone searching "Spirit" or "Spirit Sticks" on the web sites will be provided the search results shown in Exhibits A, B, C and D.

102.     Defendant's current web sites include coding and metatags whereby anyone searching "Spirit Sticks" on an internet search engine will be provided the search results shown Exhibits E and F.

103.     True and correct copy of screenshots Defendant's website at imagestuff.com displaying the auto-populated suggested search terms and internal search results "SPIRIT STICKS" are annexed hereto as Exhibit E.

104.     True and correct screenshots of Defendant's website at schoollife.com displaying the auto-populated suggested search terms, internal search results for "SPIRIT STICKS", and "SPIRIT" products page are annexed hereto as Exhibit F.

105.     Defendant created and designed its web pages to create further customer confusion between its BRAG STICKS tags or patches and Spirit Monkey's SPIRIT STICKS® tags or patches.

106.    Spirit Monkey never authorized Defendant to use SPIRIT STICKS® or STICKS for patches or tags and did not authorize Defendant to use the phrase "Spirit Stick" or "STICK" to advertise and sell Defendant's infringing products.

107.    Spirit Monkey's SPIRIT STICKS® patches or tags are famous in the marketplace throughout the state of Texas, or at least throughout the San Antonio, Houston, Dallas, and Austin metropolitan areas, and are well known by students because it was the first company selling its SPIRIT STICKS® patches or tags throughout Texas and was a commercial success in Texas by selling tens of millions of items and amassing tens of millions of dollars in revenue.

108.    Spirit Monkey and Defendant sell their products to the same schools or school organizations and the schools or school organizations give the products to students.

109.    Defendant sold its BRAG STICKS patches or tags to the same market knowing that they would reach the same recipients.

110.    These same recipients will assume a connection between the SPIRIT STICKS® patches or tags of Spirit Monkey and BRAG STICKS patches or tags of Defendant.

111.    Defendant contributed to post-sale confusion or downstream confusion.

112.    Defendant actively induced post-sale confusion or downstream confusion.

113.    Defendant has contributed to and actively induced confusion in recipients of their BRAG STICKS patches or tags.

114.    Defendant's actions have caused confusion in the minds of persons able to influence purchasing decisions or persons whose confusion presents a significant risk to the sales, goodwill, or reputation of Spirit Monkey's SPIRIT STICKS® patches or tags.

115.    Defendant's actions have caused confusion on the part of potential consumers.

116.    Defendant's actions have caused confusion of non-consumers whose confusion could create an inference that consumers are likely to be confused.

117.    Defendant's actions have caused confusion of non-consumers whose confusion could influence consumers.

118.    Defendant advertises its patch or tag goods as follows:



and

- 3D Designs
- Fun New Shapes & Trendy Designs
- Combine stock Brag Sticks for quantity discounts!
- Approximate size 3.5" length x 0.6" width x 0.02" depth

Student's proudly display 3D Brag Sticks on their backpacks.
Key rings and key chains sold separately, should you want an additional or different attachment.

and

16

Brag Sticks are unique rubber sticks designed for students to earn and collect. They are perfect for collecting on backpacks where students proudly show off their accomplishments and promote school spirit. Watch student participation increase in academic, attendance and school fundraising opportunities with this economical reward. A fresh incentive only available at School Life.

and



Introducing BRAG STICKS® a new product by School Life to help improve social, emotional and academic outcomes for all students, including students with disabilities and students from underrepresented groups. BRAG STICKS® are flexible rubbery 3D Sticks offered exclusively at School Life. Students proudly display Brag Sticks on backpacks and anywhere! Mix and match designs for quantity discounts. Students eagerly collect and trade Brag Sticks with friends which promotes school spirit and spread positive awareness. This new Brag Stick sensation is proving successful in School Stores and for School Fund Raisers. PATENT PENDING.

and

We have been in business for over 20 years with locations in Camarillo, California, Portland, Oregon, and Houston, Texas. We are still growing, still owned by two sisters, Stacey Stapleton and Kim Madey, who go to work every day along with our family of art designers, machine operators, IT staff, administrators and office staff. You will find all of our family team members successful and eager to serve you, whether on the phone or through our website.

### COUNT I: FEDERAL TRADEMARK INFRINGEMENT

119.    Spirit Monkey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

120.    Defendant's distribution, marketing, promotion, offering for sale, and sale of its BRAG STICKS tag or patch goods is likely to cause confusion, mistake, or deception as to the source, affiliation, sponsorship, or authenticity of Defendant's goods.

121.    Because of Defendant's unauthorized use of the name BRAG STICKS for patches or tags which is confusingly similar to Spirit Monkey's federally registered SPIRIT STICKS® mark for patches or tags and SPIRIT STICKS, the public is likely to believe that the Defendant's goods have been manufactured, approved by, or are affiliated with SPIRIT STICKS®.

122.    Thus, Spirit Monkey's ability to gain revenue through the sale of patches or tags using the SPIRIT STICKS® mark is limited.

123.    Defendant's unauthorized use of facsimiles of the SPIRIT STICKS® mark for patches or tags falsely represents Defendant's patches or tags as emanating from or being authorized by Spirit Monkey and places beyond Spirit Monkey's control the quality of products associated with the SPIRIT STICKS® mark.

124.    Defendant's infringement of the SPIRIT STICKS® mark is willfully intended to reap the benefit of the goodwill of Spirit Monkey, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

125.    Because of Defendant's wrongful conduct, Spirit Monkey has suffered and will continue to suffer substantial damages.

126.    Under 15 U.S.C. § 1117(a), Spirit Monkey is entitled to recover damages, which includes all profits Defendant has made as a result of their wrongful conduct.

127.    In addition, because Defendant's infringement of Spirit Monkey's SPIRIT STICKS® trademark is willful, the award of actual damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b).

128.     Spirit Monkey is also entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a). Spirit Monkey has no adequate remedy at law for Defendant's wrongful conduct because, among other things, Defendant's direct infringement, contributory infringement, and inducing infringement constitutes harm to Spirit Monkey and its SPIRIT STICKS® mark such that Spirit Monkey could not be made whole by any monetary award; if Defendant's wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and Defendant's wrongful conduct, and the resulting damage to Spirit Monkey, is continuing.

129.     Spirit Monkey is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

### COUNT II: FEDERAL FALSE DESIGNATION OF ORIGIN OR SOURCE

130.     Spirit Monkey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

131.     Spirit Monkey's SPIRIT STICKS® mark is distinctive and indicates to consumers that its patches or tags and its services originate from a single source.

132.     Spirit Monkey's SPIRIT STICKS® mark on its products and services symbolizes the substantial goodwill of Spirit Monkey resulting in significant sales of its high-quality patches or tags and services.

133.     Defendant's false designations of origin or source are likely to cause confusion, to cause mistake, or to deceive as to the origin or source of Defendant's goods or services.

134.     Defendant's use in commerce of false designations of origin or source is likely to cause consumers to believe that Defendant's and Spirit Monkey's SPIRIT STICKS® goods or services come from the same origin or source, or that Spirit Monkey sponsors or approves the

goods or services of Defendant, or that Defendant and Spirit Monkey are somehow affiliated, connected, or associated with one another when in fact they are not.

135.    Defendant's use in commerce of false designations of origin or source is injuring the goodwill of SPIRIT STICKS®.

136.    The actions of Defendant constitute a violation of the federal Lanham Act, 15 U.S.C. § 1125.

137.    At no time has Spirit Monkey authorized Defendant to create, distribute, sell, offer for sale, use, or otherwise put into commerce Defendant's BRAG STICKS tag or patch goods.

138.    Defendant is knowingly and intentionally misrepresenting and falsely designating to the public the affiliation, connection, association, origin, source, endorsement, sponsorship, and approval of Defendant's BRAG STICKS tag or patch goods to create a likelihood of confusion by the public as to the affiliation, connection, association, origin, source endorsement, sponsorship, and approval of Defendant's products.

139.    Pursuant to 15 U.S.C. § 1116, Spirit Monkey is entitled to preliminary and permanent injunctive relief to prevent Defendant's continuing use of false designations of origin or source.

140.    Defendant's false designations of origin or source is irreparably injuring Spirit Monkey's goodwill and eroding Spirit Monkey's share of market, and unless enjoined by this Court, will continue to do so.

141.    Pursuant to 15 U.S.C. § 1117, Spirit Monkey is entitled to damages for Defendant's violations, an accounting of profits made by Defendant on sales of its goods or services, and recovery of Spirit Monkey's costs of this action.

142.     Defendant has willfully and wantonly used false designations of origin or source, and its actions have been calculated to confuse, mislead, or deceive consumers, and to injure the goodwill of Spirit Monkey.

143.     The intentional engaging in false designation of origin or source by Defendant makes this an exceptional case entitling Spirit Monkey to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

## COUNT III: FEDERAL FALSE ADVERTISING

144.     Spirit Monkey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

145.     Defendant's websites and statements made by Defendants or Defendant's representatives contain literally and/or impliedly false and misleading information in direct violation of 15 U.S.C. § 1125(a).

146.     Pursuant to 15 U.S.C. §1117, Plaintiff is entitled to damages for Defendant's Lanham Act violations, an accounting of profits made by Defendant or revenues of Defendant, as well as recovery of costs and reasonable attorneys' fees incurred in this action.

147.     Defendant's acts are willful, wanton, and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Plaintiff to recover additional damages and its reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

148.     Unless enjoined by this Court, Defendant's acts will irreparably injure Plaintiff's goodwill and erode its market share.

149.     Pursuant to 15 U.S.C. § 1116, Plaintiff is entitled to preliminary and permanent injunctive relief to Defendant's continuing acts.

150.    Defendant has willfully and wantonly used false representations in connection with its products, and its actions have been calculated to confuse, mislead, or deceive consumers, and to injure the goodwill of Spirit Monkey.

151.    The intentional engaging in false representations by Defendant makes this an exceptional case entitling Spirit Monkey to an award of three times its actual damages and recovery of its reasonable attorneys' fees.

152.    Plaintiff is also entitled to prejudgment interest on their recovery.

### COUNT IV: COMMON LAW FALSE ADVERTISING

153.    Spirit Monkey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

154.    Defendant's acts constitute false advertising under the common law of the State of Texas.

155.    Defendant's acts of false advertising entitle Plaintiff to recover their damages and costs of this action together with an accounting of profits made by Defendant.

156.    The acts of Defendant's have been malicious and calculated to injure Plaintiff.

157.    The willful, wanton, and malicious nature of Defendant's conduct entitles Plaintiff to an award of its reasonable attorneys' fees and punitive damages against Defendant.

158.    Defendant's false advertising is irreparably injuring Plaintiff's goodwill and is eroding Plaintiff's share of the market and unless enjoined by this Court will continue to do so.

159.    Further, Plaintiff may not have an adequate legal remedy in the event money damages cannot be properly calculated.

160.    Under the common law of the state of Texas, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent Defendant's continuing false advertisements.

161.   Plaintiff is also entitled to prejudgment interest on its recovery.

## COUNT V: TRADEMARK DILUTION IN VIOLATION OF

## TEX. BUS. & COMM. CODE § 16.103

162.   Spirit Monkey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

163.   "Dilution" means dilution by blurring or dilution by tarnishment, without regard to the presence or absence of: (A) competition between the owner of a famous mark and another person; (B) actual or likely confusion, mistake, or deception; or (C) actual economic harm.

164.   The owner of a mark that is famous and distinctive, inherently or through acquired distinctiveness, in this state is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark.

165.   A mark is considered to be famous if the mark is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner.

166.   Plaintiff's SPIRIT STICKS® mark is famous mark that is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of Plaintiff.

167.   Based on the activities described above, Defendant has diluted and continue to dilute the distinctiveness of the Spirit Monkey's famous SPIRIT STICKS® trademark under section 16.103 of the Texas Business & Commerce Code.

168.   Defendant's acts complained of above are likely to injure Spirit Monkey's business reputation or to dilute the famous, distinctive quality of the SPIRIT STICKS® trademark by, at

the very least: (i) eroding the public's exclusive identification of Spirit Monkey's famous SPIRIT STICKS® trademark, (ii) lessening the capacity of Spirit Monkey's famous SPIRIT STICKS® trademark to identify and distinguish Spirit Monkey's goods and services, (iii) associating the Spirit Monkey's SPIRIT STICKS® trademark with products and/or services of inferior quality, and (iv) by impairing the distinctiveness of Spirit Monkey's famous SPIRIT STICKS® trademark.

169.    Defendant's use of BRAG STICKS is likely to weaken or otherwise jeopardize Spirit Monkey's highly valuable rights in its SPIRIT STICKS® trademark.

170.    Defendant's use of BRAG STICKS® constitutes "dilution by blurring" and causes an association arising from the similarity between Defendant's BRAG STICKS and Plaintiff's famous SPIRIT STICKS® mark that impairs the famous SPIRIT STICKS® mark's distinctiveness.

171.    Defendant's use of BRAG STICKS® constitutes "dilution by tarnishment" and causes an association arising from the similarity between Defendant's BRAG STICKS and Plaintiff's famous SPIRIT STICKS® mark that harms the famous SPIRIT STICKS® mark's reputation.

172.    Pursuant to Texas Business & Commerce Code section 16.103, Spirit Monkey is entitled to bring this action to enjoin Defendant from further injuring Spirit Monkey's business reputation or diluting the distinctive quality of the Spirit Monkey's SPIRIT STICKS® trademark.

173.    Spirit Monkey will be irreparably injured unless such action is enjoined by this Court as provided by Texas law.

174.    Defendant's' dilution has been willful and intentional, making this case eligible for an award of enhanced profits and damages under Texas law, as well as an award of Spirit Monkey's attorneys' fees.

## COUNT VII - COMMON LAW TRADEMARK INFRINGEMENT

175.   Spirit Monkey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

176.   Spirit Monkey's use of the SPIRIT STICKS® mark predates any alleged use by Defendant in the United States.

177.   Defendant's use of the BRAN STICKS mark is calculated to deceive the relevant consuming public into accepting and purchasing Defendant's products in the mistaken belief that they are Spirit Monkey's products, or that that they are sponsored by, connected with, or supplied under the supervision of Spirit Monkey.

178.   Such actions permit, and will continue to permit, Defendant to use and benefit from the goodwill and reputation earned by Spirit Monkey to readily obtain customer acceptance of its goods offered for sale, and to give Defendant's goods a salability they would not otherwise have, all at Spirit Monkey's expense.

179.   Defendant' aforementioned acts constitute trademark infringement in violation of the common law of the State of Texas.

180.   As a direct and proximate result of Defendant's above-described conduct, Spirit Monkey has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

181.   Unless enjoined by this Court, Defendant's above-described conduct will cause irreparable injury, for which Spirit Monkey has no adequate remedy at law, injury to the reputation and good will of Spirit Monkey as well as confusion and deception among consumers.

182.   Defendant's acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard

of Spirit Monkey's rights, were intended to cause confusion, and to trade off the good will in Spirit Monkey's SPIRIT STICK mark, making this an exceptional case and entitling Spirit Monkey to enhanced damages and attorneys' fees at least as provided under Texas Civil Practices & Remedies Code § 41.003.

## COUNT VII: COMMON LAW UNFAIR COMPETITION

183.    Spirit Monkey incorporates by reference the factual allegations of the preceding paragraphs as though fully set forth herein.

184.    Defendant's use of the BRAG STICKS mark is calculated to deceive the relevant consuming public into accepting and purchasing Defendant's products in the mistaken belief that they are Spirit Monkey's products, or that that they are sponsored by, connected with, or supplied under the supervision of Spirit Monkey.

185.    Such actions permit, and will continue to permit, Defendant to use and benefit from the goodwill and reputation earned by Spirit Monkey to readily obtain customer acceptance of the goods offered for sale, and to give Defendant's goods a salability they would not otherwise have, all at Spirit Monkey's expense.

186.    Defendant's adoption and use of the BRAG STICKS mark on its goods constitutes unfair competition, palming off, passing off, and unjust enrichment in violation of the common law of the State of Texas.

187.    By such use, Defendant has represented that its goods are those supplied by Spirit Monkey.

188.    This use creates likelihood that the public will be confused or deceived.

189.    Defendant' aforementioned acts constitute unfair competition in violation of the common law of the State of Texas.

190.    As a direct and proximate result of Defendant's above-described conduct, Spirit Monkey has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

191.    Unless enjoined by this Court, Defendant's above-described conduct will cause irreparable injury, for which Spirit Monkey has no adequate remedy at law, injury to the reputation and good will of Spirit Monkey as well as confusion and deception among consumers.

192.    Defendant's acts complained of herein have been and are grossly negligent, deliberate, willful, intentional, in bad faith, malicious, with full knowledge and conscious disregard of Spirit Monkey's rights, intended to cause confusion, and to trade off the good will in Spirit Monkey's SPIRIT STICK® mark, thus making this an exceptional case and entitling Spirit Monkey to enhanced damages and attorneys' fees, at least as provided under Texas Civil Practices & Remedies Code section 41.003.

## COUNT IX: COMMON LAW PALMING OFF

193.    Spirit Monkey incorporates by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

194.    Defendant has engaged in direct palming off and passing off, contributory palming off and passing off, and inducing palming and passing off its goods and services as originating or sponsored by Spirit Monkey, in violation of the common laws of the State of Texas.

195.    Defendant's acts of palming off and passing off entitle Spirit Monkey to recover its damages and costs of this action, together with an accounting of profits made by Defendant.

196.    Defendant's palming off and passing off its goods or services as originating or sponsored by Spirit Monkey has been malicious and calculated to injure Spirit Monkey and was with knowledge of Spirit Monkey's prior rights and intentional.

27

197.     The willful, wanton and malicious nature of Defendant's conduct entitles Spirit Monkey to an award of its reasonable attorney's fees and punitive damages.

198.     Defendant's palming off and passing off its goods or services as originating or sponsored by Spirit Monkey is irreparably injuring Spirit Monkey's goodwill and eroding Spirit Monkey's share of the market; and unless enjoined by this Court, Defendant will continue to do so.

199.     Further, Spirit Monkey may not have an adequate legal remedy in the event money damages cannot properly be calculated.

200.     Under the common law of the State of Texas, Spirit Monkey is entitled to preliminary and permanent injunctive relief to prevent Defendant from continuing to palm off and pass off its goods and services and the goods and services of Spirit Monkey.

## COUNT X:  CANCELLATION OF FEDERAL TRADEMARK APPLICATION

201.     Spirit Monkey incorporates by reference the factual allegations in the preceding paragraphs as if fully set forth herein.

202.     In any action involving a registered mark, the Court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore cancelled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.

203.     Defendant's BRAG STICKS registration should be canceled under 15 U.S.C. § 1119 pursuant to the final order of the court in an action involving the registered mark.

## NOTICE OF LITIGATION HOLD REQUIREMENT

204.     Defendant is hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic

recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant know, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

205.    As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of Defendant's agents or employees if Defendant's electronically stored information resides there.

206.    Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in

damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify their agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

207.    Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for itself and against Defendant by this Court as follows:

A.      Enter an injunction prohibiting Defendant and its respective officers, directors, agents, servants, employees, related companies, licensees, and all persons acting for, with, by, though, and under any of them, from any and all use and direct and indirect infringement of the Plaintiff's Marks, and any other Plaintiff's marks, names and/or logos, and false designations of origin or source and Defendant's dilution, false advertising, unfair competition and palming off or any derivation thereof directly or indirectly, for itself, or through, on behalf of, or in conjunction with the sale or offer of any products or services by Defendant;

B.      Enter judgment in favor of Plaintiff for actual damages in an amount to be determined by the Court, where such damages are trebled due to Defendant's willful and intentional disregard of Plaintiff's known rights, pursuant to at least 15 U.S.C. § 1117 and Texas Business & Commerce Code sections 16.102-16.104;

C.      Enter judgment in favor of Plaintiff for Defendant's profits in an amount to be determined by the Court, where such profits are trebled due to Defendant's acts of willful and intentional disregard and violation of Plaintiff's known rights, pursuant to at least 15 U.S.C. § 1117 and Texas Business & Commerce Code sections 16.102-16.104;

D.      Award Plaintiff all costs of the action and reasonable attorneys' fees pursuant to the provisions of at least 15 U.S.C. § 1117 and Texas Business & Commerce Code sections 16.102-16.104;

E.      Order Defendant to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant have complied with the injunctions;

F.      Allow Plaintiff recovery of all damages it has sustained because of Defendant' activities, and that said damages be trebled;

G.      Cancel Defendant's federal trademark registration No. 5,940,164;

H.      Order that an accounting be directed to determine Defendant' profits resulting from the activities complained of herein, and that such profits be paid over to Plaintiff, increased as the Court finds to be just under the circumstances of the case;

I.      Allow Plaintiff recovery of its costs of this action and prejudgment and post-judgment interest; and

J.      An award to Plaintiff of such further relief at law or in equity as the Court deems appropriate, just and proper.

DATED this 18 day of March, 2020.

Respectfully submitted,

31



_____
Charles W. Hanor
Texas Bar No. 08928800
Hanor Law Firm, PC
750 Rittiman Road
San Antonio, TX  78209
(210) 829-2002 Phone
(210) 829-2001 Fax
chanor@hanor.com

*Attorneys for Plaintiff*